UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PRATT & WHITNEY CANADA CORP.,
        Plaintiff,

v.   CASE NUMBER: 05 1136 ESH

UNITED STATES DEPARTMENT OF
DEFENSE, UNITED STATES SOUTHERN
COMMAND,
        Defendant.
_____/

## DECLARATION OF PATRICIA A. LEID

I, PATRICIA A. LEID, base this Declaration on personal knowledge and my direct involvement with the submission of the Freedom of Information Act ("FOIA") requests on behalf of Pratt & Whitney Canada Corp. to the Defendant, United States Department of Defense, United States Southern Command. All conversations and communications referenced herein involve my personal contact with the noted attorney.

    1.    I am an attorney and partner with the firm of Thornton, Davis & Fein, P.A. in Miami, Florida, retained to represent Pratt & Whitney Canada Corp. ("PWC"), an aircraft engine manufacturer, in the underlying wrongful death action filed in the United States District Court for the Middle District of Florida, styled: *Judith G. Janis and Jonathan N. Janis, as Co-Personal Representatives for the Estate of Thomas J. Janis, Plaintiffs, v. Pratt & Whitney Canada, Inc., et al., Defendants*, Case No. 6:04-CV-184-Orl-GKS-DAB.

    2.    I am a member in good standing of the Florida Bar. I also hold inactive status in the New York and District of Columbia Bars. I am an Aviation Board Certified Attorney designated by the Legal Specialization Department of the Florida Bar and have been practicing

law since 1994. Prior to my law career, I was employed in the aviation industry for over twenty years.

3. Approximately 95% of my practice involves aviation related products liability defense litigation. I have represented aviation maintenance service companies, airlines, airport facilities, and aircraft component manufacturers in numerous aviation disasters and incidents, including, but not limited to, multiple military mishaps.

4. I have a thorough working knowledge of the various military mishap investigations conducted and reported by the United States Army, Navy, and Air Force, including collateral, accident, mishap and safety investigation board documentation. I am familiar with the FOIA: its procedures, exemptions, and the appeal process.

5. On November 15, 2004, I first made contact telephonically and through a written FOIA request with Enrique Arroyo, Attorney for United States Southern Command in Miami, Fla. Mr. Arroyo advised me that Southern Command was the correct military location to receive the FOIA request and no other military or governmental offices need receive the FOIA request. Contrary to the assertions in paragraph 21 of the Arroyo Declaration (which erroneously states a date of initial contact of November 15, <u>2003</u>), at no time did Mr. Arroyo advise me that the FOIA request should be sent directly to the Navy. Indeed, at no time during this prolonged year-long process of endeavoring to obtain the documents did Mr. Arroyo suggest that I submit a separate request to the Navy or cease communicating directly with Southern Command.[1] There was no mention of Puerto Rico, closure of a naval base, or moving offices. In fact, it is my

---

[1] Contrary to paragraph 28 of the Declaration of Enrique Arroyo, Exhibit G thereto contains neither the letter nor the "documents." The August 9, 2005, letter appears as Exhibit H to the Declaration of Enrique Arroyo, although Exhibit H is not referenced in the text of the Declaration. There is textual reference to Exhibit I, but there was no Exhibit I in the Arroyo Declaration.

2

recollection that my exact words were, "Do I also need to send this FOIA request to the Navy?" and Mr. Arroyo said, "No, I will take care of it." In total reliance upon Attorney Arroyo's advice and assurances, neither I nor other counsel for PWC submitted any simultaneous or similar requests to the U.S. Navy or other governmental offices with respect to the comprehensive first FOIA request. Contrary to paragraph 22 of Mr. Arroyo's Declaration, which suggests that my November 15, 2004, letter was not received until November 23, 2004, the FOIA request was in fact sent both by United States mails and by facsimile, and the facsimile transmission to the Southern Command fax number (305) 437-1320 was successfully sent at 15:56 on November 15, 2004. (*See* FOIA request with fax transmission confirmation, Exhibit 1.) I am familiar with Thornton, Davis & Fein, P.A.'s routine business practices. They include filing the facsimile confirmation sheets with the documents that were sent, and the facsimile confirmation and the FOIA letter attached as Exhibit 1 were filed together.

6. On November 29, 2004, a letter acknowledging receipt of the FOIA request and assigning it "Ref.: SC 05-030" was received in my office. The letter was dated November 23, 2004, and it was from Jean Carillo, Lieutenant, U.S. Navy, Adjutant General, on DoD, United States Southern Command letterhead. A copy of this letter is attached as Exhibit B to the Declaration of Enrique Arroyo.

7. Despite warnings, numerous requests for cooperation, and multiple conversations by me with Southern Command and the Navy, as of June 9, 2004, seven months after submission of the original FOIA request to Southern Command, PWC still had not received a single document in response. The FOIA lawsuit was filed on June 9, 2004, because of the complete lack of a substantive response from Southern Command and due to the rapidly approaching court-mandated discovery deadlines in the underlying wrongful death act litigation. The FOIA

3

lawsuit was filed against the only entity that Mr. Arroyo said was responsible for the FOIA response and which, up to that date, had refused to produce any responsive documents - The United States Department of Defense, United States Southern Command.

8.      During July and August 2005, communications were initiated and efforts made between Andrea McBarnette, U.S. Attorney's Office, Department of Justice, representing Southern Command in the litigation, and myself to amicably resolve this matter.  On August 11, 2005, a redacted copy of the mishap report finally was received in our office.  It failed to include numerous referenced documents but did contain duplicative, unusable blackened photographs.  I reviewed the report and accompanying documents.  The FOIA statutory exemptions were not at issue at that time because the Vaughn Index was not provided with the production and we did not know what was redacted or why.  (*See* email to Andrea McBarnette, dated 8/19/05 re: missing Vaughn indices and responsive email on 8/22/05, Exhibit 2.)

9.      Immediately after receipt of the investigative report, Ms. McBarnette asked PWC to agree that the production was complete and dismiss the lawsuit.  Co-counsel (in the underlying litigation) David Wagner and I reviewed the FOIA production and found that there were numerous significant documents and substantial information omitted from the production.  On August 22, 2005 and August 30, 2005, I sent correspondence to Ms. McBarnette advising her of the deficiencies in the production and pending issues PWC was willing to negotiate ("August correspondence," Exhibit 3).  Southern Command had produced **one** report related to the subject mishap of February 13, 2003, and partial supportive documentation in response to the ten items requested in the FOIA request (i.e., SC 05-030).  The August correspondence listed ten specific referenced documents or issues from the investigative report that were omitted but were relevant,

4

releasable, and/or redactable. These ten items related to the following two paragraphs in the FOIA request:

    a.    (1) Any and all releasable information from the U.S. Navy Safety Center Investigation and report, including, but not limited to photographs, videotapes, interviews, witness statements, maps, recordings, wreckage inspection notes, and other related materials compiled in the investigation.

    b.    (8) Any and all tape recordings or cockpit transmissions sent by the crew or passengers on the subject aircraft to Colombian foreign authorities, military, civilian contractors, consulate or government entities.

10. On September 12, 2005, I received an email from Ms. McBarnette saying "SouthCom" has received and reviewed our letters (August 22 and August 30) and has no further responsive documents or materials. She also stated that DOJ would be filing a summary judgment motion that day. (*See* email from McBarnette to Leid dated 9/12/05, Exhibit 4.)

11. On October 4, 2005, I participated in a teleconference with Ms. McBarnette and David Wagner to discuss outstanding documents referenced in the investigative report and the August correspondence. Ms. McBarnette reiterated during that call that SouthCom said there are no more documents. Ms. McBarnette also advised that SouthCom denied knowledge of usable copies, or the originals, of the black & white photocopies of photographs that were included under the Department of Defense, United States Southern Command's August 9, 2005, letter from Ivery Taylor, Lt. Col., US Army, Deputy Director, Manpower, Personnel and Administration. We asked Ms. McBarnette to provide the names of the Navy personnel who were involved in the report or handling of the documents so that we could contact them directly. Ms. McBarnette would not provide the names of the Navy personnel with whom she was

working on this project but did later assist us in forwarding our August correspondence to unknown (to us) Navy personnel for their further review.

12. Following the October 4th telephone conference, I received five separate letters from various departments and divisions of the Navy, up to the Pentagon level, denying the possession, custody or control of any documents responsive to our August correspondence, which was in follow-up to the investigative report prepared by the Navy in response to the original FOIA request. (*See* Navy letters received during the month of October 2005 in response to the August correspondence forwarded by Ms. McBarnette to the Navy, Exhibit 5.)

13. In further follow-up to the October 4, 2005 telephone conference with Ms. McBarnette, I personally reviewed for a second time the inadequate, poor quality photocopies attached to the report. This review included preparing a chart listing all of the duplicative photographs and the file names where they had been saved on a computer or CD by an unknown source. (*See* correspondence of October 7, 2005 to McBarnette from Leid, with file names of the saved photographs attached, Exhibit 6.)

14. On October 31, 2005, I spoke with Patricia Leonard (Deputy Director, Claims, Investigations and Tort Litigation, Department of the Navy, Office of the Judge Advocate General) concerning a *Touhy* letter request I had sent to her for the purposes of seeking approval to depose the Navy investigators involved in the subject mishap. She was somewhat familiar with the PWC efforts through the FOIA to obtain documents related to the investigative report. The conversation resulted in her request to have forwarded pages of the report referencing the witnesses in the *Touhy* letter and the August correspondence.

15. During the telephone conversation, Ms. Leonard said that she might know where the sought after photographs could be located. Later in the day on October 31st, I emailed her to

6

ask if perhaps the originals of the published photographs might have been stored with the work product JAGMAN litigation report. Ms. Leonard advised she had located some color reproductions she planned to give me. Further, she stated she had found a transcript of the radio transmissions, the existence of which had previously been denied. Ms. Leonard wrote that she would inquire of SouthCom about redaction of the transcript for us.[2] (*See* email dated October 31, 2005 between Leid and Leonard, Exhibit 7.)

      16. Based on the conversations with Ms. Leonard, on November 3, 2005 I asked her whether she had any additional information as to documents or materials that we could expect to receive in the immediate future. It was PWC's concern to present an accurate picture to the Court of the newly discovered, yet unseen (by PWC), evidence anticipated from the Government. (*See* email dated November 3, 2005 from Leid to Leonard re additional documents, Exhibit 8).

      17. Within a few hours of communicating with the Navy, I received an email from Ms. McBarnette stating, "I've spoken with SouthCom as well as the Navy regarding the items that you indicated were missing from the production and/or Vaughn. There has been some progress and the Defendant will need more time to sort out what it is that we can do to resolve this case if possible …." (*See* email dated November 3, 2005 from McBarnette to Leid, Exhibit 9.)

---

[2] PWC has consistently maintained that it does not seek privileged or confidential information that would in any way jeopardize the security or safety of the alleged hostages or ongoing drug surveillance operations. However, there may have been portions of the cockpit transmissions during the final ten to 15 minutes that are extremely relevant to: the mechanical operation of the aircraft, whether the two ammunition holes in the wing were fired prior to the emergency landing, engine performance, etc. All of these factual matters may have been discussed in the transcript by the pilots and are <u>not</u> privileged under FOIA.

18.     Viewing this information in a positive light but with the deadline for PWC's response to Southern Command's summary judgment motion looming, PWC presented several options to Southern Command in order to resolve this matter. Half of the presented options involved PWC voluntarily dismissing the lawsuit, without seeking costs and fees, if Southern Command would, in good faith, provide some concrete information about these documents. I also requested some sort of reasonable timeframe for production of the photographs and documents. I was told by Ms. McBarnette that no one knows what is in the documents and that there is no time frame for release. This good news/bad news scenario places PWC right back where it started, with the knowledge that the documents exist but unable to gain possession of the responsive documents for an indeterminable time period. There is an underlying lawsuit with court-mandated discovery cutoffs and trial period. It is extremely prejudicial for PWC to continue to have these FOIA responsive documents held hostage by Southern Command and/or the Navy.

## DECLARATORY AFFIRMATION

I declare under penalty of perjury that the foregoing Declaration of Patricia A. Leid is true and correct to the best of my knowledge and belief.

This Declaration was executed at Miami, Florida, on:

November 7, 2005

DATE

*Patricia A. Leid*

**PATRICIA A. LEID**
District of Columbia Bar No. 446894
(inactive)
Florida Bar No. 0027006
**THORNTON, DAVIS & FEIN, P.A.**
Brickell Bayview Centre, Suite 2900
80 Southwest 8th Street
Miami, FL 33130
Telephone: (305) 446-2646
Fax: (305) 441-2374